```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
```

___

JAMIE L. RAUCCI,

                                     **Plaintiff,**

  vs.                                                               1:19-CV-1002
                                                                                  (MAD/CFH)

**CENTER FOR DISABILITY SERVS., INC.,**
                                       **Defendant.**

___

**APPEARANCES:**                                  **OF COUNSEL:**

**OFFICE OF RONALD J. KIM**            **RONALD J. KIM, ESQ.**
P.O. Box 318
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**JACKSON LEWIS P.C.**                      **BENJAMIN F. NEIDL, ESQ.**
677 Broadway
9th Floor
Albany, New York 12110
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      On August 14, 2019, Plaintiff Jamie L. Raucci commenced this action against Defendant Center for Disability Services, Inc., pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New York Human Rights Law, alleging claims of a hostile work environment due to sex discrimination, disparate treatment due to sex discrimination, pregnancy discrimination, and retaliation. *See* Dkt. No. 1. In response to Defendant's letter to partially move to dismiss the original complaint, Plaintiff filed an amended complaint, withdrawing the state law claims. *See* Dkt. No. 15.

Presently before the Court is Defendant's partial motion to dismiss the claims against it, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 22-2.

## II. BACKGROUND

Plaintiff was employed by Defendant as a Program Manager on or about September 25, 2017. *See* Dkt. No. 15 at ¶ 15. On or about June 27, 2018, Plaintiff informed Defendant that she was pregnant. *See id.* at ¶ 17. Plaintiff alleges that four days later, on July 2, 2018, her supervisors Janet Flood and Melissa Lane Lennon "retaliated against" Plaintiff and "stated they were concerned about her previous leaves of absences." *See id.* at ¶ 18. Plaintiff alleges that on July 8, 2018, Defendant "formally disciplined" Plaintiff for approved work and medical leave absences that occurred prior to Plaintiff's pregnancy announcement. *See id.* at ¶ 20.

On July 26, 2018, Plaintiff's doctor ordered that, due to Plaintiff's pregnancy, she should be restricted to working no more than forty (40) hours each week. *See id.* at ¶ 21. Defendant refused to provide the "reasonable accommodation based on her pregnancy, and directed [Plaintiff] to go on disability." *Id.* at ¶¶ 22–23. Plaintiff alleges that Defendant also informed her that, upon her return to work after her pregnancy, she "would effectively be demoted and her pay would be reduced." *Id.* at ¶ 24. On August 31, 2018, after what Plaintiff contends was a constructive termination, Plaintiff resigned from her position. *See id.* at ¶ 25.

On August 16, 2018, Plaintiff filed a verified complaint with the New York State Division of Human Rights. *See id.* at ¶ 12. The New York State Division of Human Rights issued a determination and order on or about February 12, 2019. *See id.* at ¶ 13. On or about May 20, 2019, Plaintiff received a notice of suit from the United States Equal Employment Opportunity Commission. *See id.* at ¶ 14. Plaintiff subsequently filed this action on August 14, 2019, eighty-six days after receiving the notice of suit. *See* Dkt. No. 1.

# III. DISCUSSION

A.   **Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

3

plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *Twombly*, 550 U.S. at 558, 570.

"The *Iqbal* plausibility standard applies in conjunction with employment discrimination pleading standards." *Gillman v. Inner City Broad. Corp.*, No. 08 Civ. 8909, 2009 WL 3003244, *3 (S.D.N.Y. Sept. 18, 2009). Employment discrimination claims need not contain specific facts establishing a *prima facie* case of discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514–15 (2002). Rather, an employment discrimination complaint "must include only 'a short and plain statement of the claim' . . . [that] 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* at 512 (quotation and citations omitted).[1]

## B.     Title VII Hostile Work Environment

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of'" a characteristic protected by Title

---

[1] Plaintiff and Defendant debate in their respective motion papers about the standard that should be applied in the present case. *See* Dkt. No. 28 at 3–5; Dkt. No. 29 at 1–4. The relevant standard that the Court applies for a motion to dismiss has been addressed within. The Court will apply the *McDonnell Douglas Corp. v. Green* standard in more detail if it becomes relevant at a later stage, as this burden-shifting framework involves addressing the merits of discrimination claims under Title VII. *See* 411 U.S. 792 (1973). However, a minimal inference of discriminatory motivation is not relevant based on the claims that Defendant has moved to dismiss. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) ("A plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss").

VII. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)); *see also Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).

"In order to establish a hostile work environment claim under Title VII, a plaintiff must ... show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* In assessing the hostility of a work environment, courts examine the "totality of the circumstances." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003). In particular, courts "consider[ ] a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gorzynski*, 596 F.3d at 102 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

"A plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 119 (2d Cir. 2010). In order to be considered pervasive, a plaintiff must show "that the incidents were 'sufficiently continuous and concerted.'" *Brennan v. Metro. Opera Assoc.*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Robinson v. Purcell Const. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y.

5

2012) (finding five "crude and offensive" gender-based comments were "neither pervasive nor severe"). The "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). However, a single incident—if it is sufficiently severe—can create a hostile work environment if it transforms the plaintiff's workplace. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

In the present matter, the Court finds that Plaintiff has failed to plead facts alleging that she suffered abuse rising to the level of a hostile work environment. In her response to Defendant's motion, Plaintiff first argues that she pled a hostile work environment claim "when she told [Defendant] that she was pregnant, her supervisors took disciplinary action against her by informing her they were concerned about previous approved leaves of absence." Dkt. No. 28 at 7 (citing Dkt. No. 15 at ¶ 18). Further, Plaintiff claims that her amended complaint details her request for a medical accommodation in the form of a limited workweek and Defendant's denial of that request and subsequent order that she go on disability. *See id.* (citing Dkt. No. 15 at ¶¶ 21-23). Plaintiff argues that this demonstrates Defendant's hostility towards here sex/pregnancy and that "[i]t is plausible (and common sense) that the defendant's insistence that she go on disability, rather than work, was rooted in its illegal, discriminatory bias and hostility towards her sex/pregnancy." *Id.* Finally, Plaintiff contends that Defendant's hostility towards her sex/pregnancy is demonstrated by Defendant's intention to demote her upon her return to work. *See id.* (citing Dkt. No. 15 at ¶¶ 24-25).

As Defendant correctly contends, these allegations fall far short of demonstrating sufficiently severe or pervasive conditions that are necessary to support a Title VII hostile work environment claim. *See, e.g.*, *Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018)

6

(affirming dismissal of complaint because allegations that the plaintiff was ostracized by supervisors over three years and was suspended without pay for ten days were insufficient to meet the "high bar" required to state a claim for a hostile work environment); *Littlejohn v. City of New York*, 795 F.3d 297, 320-22 (2d Cir. 2015) (affirming dismissal because allegations that supervisor made negative statements about the plaintiff, was impatient and used harsh tones with the plaintiff, required the plaintiff to recreate work, replaced the plaintiff at meetings, wrongfully reprimanded the plaintiff, increased the plaintiff's reporting schedule, and sarcastically telling the plaintiff "you feel like you are being left out" and "[you do not] understand the culture" "could not support a finding of a hostile work environment"); *Fleming v. MaxMara USA, Inc.*, 371 Fed. Appx. 115, 119 (2d Cir. 2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58-59 (2d Cir. 2004) (affirming summary judgment in favor of the employer because two instances of overt sexual solicitation over two months and a subsequent disciplinary write up were "not sufficiently severe or pervasive to create a hostile work environment"); *Keaton v. Connecticut Dep't of Rehabilitation Servs.*, No. 3:16-cv-1810, 2018 WL 1245728, *10 (D. Conn. Mar. 9, 2018) (finding insufficient to support a hostile work environment claim allegations that the plaintiff's supervisor gave the plaintiff lower ratings, attempted to intimidate the plaintiff into signing a performance evaluation without reading it, attempted to intimidate the plaintiff to act against her own best interests, and otherwise undermined and sabotaged the plaintiff's work); *Johnson v. Connecticut Dep't of Admin. Servs.*, No. 17 CV 901, 2018 WL 306697, *8 (D. Conn. Jan. 5, 2018) (granting motion to dismiss after finding allegations that the defendant cited the

plaintiff for unauthorized absence, gave the plaintiff a negative evaluation, and denied the plaintiff mentoring were insufficient); *Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 196 (E.D.N.Y. 2016) (finding allegations that the plaintiff's supervisor laughed at him, someone falsified his information, and that he suffered ridicule, humiliation, demotion, and suspension to be insufficiently severe or pervasive under an objective standard, and refusing to consider discrete discriminatory acts in support of hostile environment claim); *Jones v. Target Corp.*, No. 15 CV 4672, 2016 WL 50779, *9 (E.D.N.Y. Jan. 4, 2016) (dismissing hostile work environment claims as insufficient where the plaintiff alleged employees played derogatory music, told the plaintiff she was "slow," followed her around the store timing her, and where the plaintiff's supervisor told the plaintiff "he was going to run [the plaintiff] out of [the store]").

Based on the foregoing, the Court grants Defendant's motion to dismiss Plaintiff's Title VII hostile work environment claim.

## C.  Title VII Retaliation

Section 704(a) of Title VII makes it unlawful for an employer to retaliate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 48 (2d Cir. 2012). To plead a retaliation claim, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (quotation omitted).

"A plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Bundschuh v. Inn on the Lake*

*Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012). "[I]n order to constitute a protected activity for purposes of a retaliation claim, the complaint must be related to discrimination on a basis prohibited by Title VII." *Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012). Informal protests of discrimination, such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges" include recognized forms of protected activity. *Matima v. Celli*, 228 F.3d 68, 78–79 (2d Cir. 2000) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

The next step in making a *prima facie* case of retaliation, "'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Bundschuh*, 914 F. Supp. 2d at 405 (quoting *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006)). Unlike a disparate treatment claim under Title VII, a retaliation claim "is not limited to discriminatory actions that affect the terms and conditions of employment." *Kessler*, 461 F.3d at 207 (quoting *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 64 (2006)). Instead, to pursue a retaliation claim under Title VII, "'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *White*, 548 U.S. at 68). "[T]here are no bright-line rules with respect to what constitutes an adverse employment action for purposes of a retaliation claim, and therefore courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (internal quotation omitted).

In the present matter, Plaintiff initially argues that she engaged in a protected activity when she requested a reasonable accommodation to her pregnancy in the form of a restricted workweek, which was refused. *See* Dkt. No. 28 at 9. Plaintiff's request for the accommodation, unaccompanied by a complaint that she believed she was being discriminated against because of her pregnancy, is not a protected activity. Simply put, this was not an action "taken to protest or oppose statutorily prohibited discrimination." *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (quotation omitted).

In *Colton v. New York Div. of State Police*, No. 5:14-cv-801, 2017 WL 5508911 (N.D.N.Y. Feb. 8, 2017), the plaintiff requested a transfer to a different work location, allegedly because she wanted to get away from co-workers who were harassing her. The transfer request, however, was not considered a "protected activity" because the plaintiff failed to mention the harassment to her employer when she made the request. *See id.* at *15 (citations omitted); *see also Bey v. I.B.E.W. Local Union # 3 Union Representatives*, 374 Fed. Appx. 187, 188 (2d Cir. 2010) (holding that "a transfer request is not a 'protected activity' within the meaning of 42 U.S.C. § 2000e3"); *Batchelor v. City of New York*, 12 F. Supp. 3d 458, 483 (E.D.N.Y. 2014) (holding that the plaintiff's transfer request was not a protected activity where the plaintiff did not state that "her request to transfer was motivated by her belief that her working conditions were infused with gender discrimination" and because there was "also no contextual evidence of Plaintiff's comments to her coworkers or other supervisors expressing a belief that the work environment was discriminatory, or otherwise indicating that her conduct was protected activity rather than a general complaint") (citations omitted).

As in the cases cited above, Plaintiff's complaint does not allege that her request for a schedule change had anything to do with protesting discrimination, or that it alerted Defendant to

any discriminatory activity. Rather, Plaintiff's complaint makes clear that she requested the accommodation simply because her doctor recommended it. As such, Plaintiff's requested accommodation does not constitute "protected activity" for purposes of her retaliation claim.[2]

Plaintiff also argues that she "engaged in a protected activity by opposing the filing of a disability claim in lieu of her requested accommodation to her pregnancy." Dkt. No. 28 at 9. Again, this allegation is insufficient. As Defendant correctly notes, the complaint does not really allege that Plaintiff did anything to protest or oppose going on disability. Rather, the complaint is silent about how, if at all, Plaintiff responded to Defendant's alleged direction that she "go on disability." Dkt. No. 15 at ¶ 23. Without an allegation that Plaintiff informed Defendant that she believed she was being subjected to discrimination, the accommodation request and rejection does not support her retaliation claim. *See Moncrief v. N.Y. Pub. Library*, 343 Fed. Appx. 627, 629 (2d Cir. 2009) (noting that "because [the plaintiff's] 2002 email — the basis of her retaliation claim — made no mention of racial discrimination, the district court correctly determined that she never participated in a protected activity, and therefore, her retaliation claim failed as a matter of law"); *Newsome v. IDB Capital Corp.*, No. 13-CV-6576, 2016 WL 1254393, *25 (S.D.N.Y. Mar. 28, 2016) ("General allegations of mistreatment do not constitute protected activity") (citing *Drumm v. SUNY Geneseo Coll.*, 486 Fed. Appx. 912, 914 (2d Cir. 2012)).

Finally, Plaintiff contends that a "third protected activity as pled ... was her opposition to [Defendant's] proposed demotion upon her return to work after she had her baby." Dkt. No. 28 at 9 (citing Dkt. No. 15 at ¶ 54). Again, however, the amended complaint does not state how, if at all, she purportedly objected to the would-be demotion. At paragraph twenty-four of the amended

---

[2] As Defendant correctly notes, whether Plaintiff should have received a schedule change as an accommodation is clearly relevant to her pregnancy discrimination claim, but the complaint offers no basis to classify the alleged denial as "retaliation."

11

complaint, Plaintiff claims that Defendant informed her "that upon her return to work after her baby was born she would effectively be demoted and her pay would be reduced." Dkt. No. 15 at ¶ 24. The next paragraph simply alleged that she resigned on August 31, 2018, because she felt that she had been "constructively terminated." *Id.* at ¶ 25. Nothing in the amended complaint indicates whether Plaintiff expressed any opposition to the demotion, much less any opposition that mentioned "discrimination on the basis of any of Plaintiff's protected characteristics." *Bethea v. JP Morgan Chase & Co.*, No. 15-CV-3544, 2019 WL 4805141, *12 n.21 (E.D.N.Y. Sept. 30, 2019) (citations omitted).

Based on the foregoing, the Court grants Defendant's motion to dismiss as to Plaintiff's Title VII retaliation claim.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that the prayers for relief under the New York State Human Rights Law in ¶¶ B, D, F, and H of Plaintiff's amended complaint are stricken;[3] and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

---

[3] Upon Plaintiff's withdrawal of her claims under the New York State Human Rights Law, these prayers for relief are no longer relevant to the remaining claims. Plaintiff does not oppose their removal. *See generally* Dkt. No. 28.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 18, 2020
      Albany, New York

*Mae A. D'Agostino*
U.S. District Judge